**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| PLUMBERS & PIPE FITTERS, LOCAL 23, U.A.; ) | |
| ROCKFORD PIPE TRADES INDUSTRY ) | NO.: 15-CV-50306 |
| PENSION FUND; ) | |
| PLUMBERS & PIPE FITTERS, LOCAL 23, U.A. ) | |
| HEALTH & WELFARE FUND; ) | JUDGE: |
| PLUMBERS & PIPE FITTERS, LOCAL 23, U.A. ) | |
| JOURNEYMAN  AND APPRENTICE TRAINING ) | |
| FUND; ) | MAG. JUDGE: |
| PIPING INDUSTRY COUNCIL OF THE ) | |
| ROCKFORD AREA; and ) | |
| ROCKFORD PIPE TRADES LABOR ) | |
| MANAGEMENT ) | |
| COOPERATIVE COUNCIL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| KELSEY EXCAVATING, INC., an Illinois ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

NOW COMES the Plaintiffs, the PLUMBERS & PIPE FITTERS, LOCAL 23, U.A. *et al.*,
by and through their attorneys, JOHNSON & KROL, LLC, complaining of the Defendant
KELSEY EXCAVATING, INC. ("KELSEY EXCAVATING"), and allege as follows:

**JURISDICTION AND VENUE**

1.      This action arises under Section 301 of the Labor-Management Relations Act (29 U.S.C.
        §185) and under Sections 502 and 515 of the Employee Retirement Income Security Act
        (hereinafter referred to as "ERISA") (29 U.S.C. §§1132 and 1145).   The Court has
        jurisdiction over the subject matter of this action pursuant to 29 U.S.C. §§185(a) and
        1132(e)(1) and 28 U.S.C. §1331.

1

2. Venue is proper in this court pursuant to 29 U.S.C. §185(a) in that a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in the Northern District of Illinois, Western Division.

## PARTIES

3. The PLUMBERS & PIPE FITTERS, LOCAL 23, U.A. ("UNION") is an unincorporated voluntary association with its principal place of business located at 4525 Boeing Dr., Rockford, Illinois. The UNION is a labor organization as defined under Section 301 of the Labor-Management Relations Act (29 U.S.C. §185).

4. The ROCKFORD PIPE TRADES INDUSTRY PENSION FUND ("PENSION FUND"), PLUMBERS & PIPEFITTERS, LOCAL 23 U.A. HEALTH & WELFARE FUND ("WELFARE FUND"), the PLUMBERS & PIPE FITTERS, LOCAL 23 U.A. JOURNEYMAN AND APPRENTICE TRAINING FUND ("APPRENTICESHIP FUND") (hereinafter collectively referred to as the "TRUST FUNDS") are multiemployer plans under 29 U.S.C. §1002, which receive contributions pursuant to the Labor Agreement between the employers and the UNION.

5. The APPRENTICESHIP FUND is the collection agent for the International Training Fund.

6. The ROCKFORD PIPE TRADES LABOR MANAGEMENT COOPERATIVE COUNCIL ("RPT-LMCC") is a labor management cooperation committee that is administered in Rockford, Illinois.

7. The PIPING INDUSTRY COUNCIL OF THE ROCKFORD AREA ("PICRA") is an industry improvement fund administered in Rockford, Illinois.

8. The TRUST FUNDS, RPT-LMCC and PICRA are third-party beneficiaries of the Labor Agreement.

2

9.     Pursuant to the Labor Agreement, the UNION is the bargaining representative of KELSEY EXCAVATING'S bargaining-unit employees.

10.    The Defendant KELSEY EXCAVATING is an Illinois Corporation with its principal place of business located at 17855 W. Campbell Road, Davis, Illinois 61019.

## COUNT I
## ENFORCEMENT OF ARBITRATION AWARD

11.    Plaintiffs incorporate by reference paragraphs one (1) through ten (10) as if fully set forth herein.

12.    KELSEY EXCAVATING is an employer engaged in an industry affecting commerce which agreed to be bound by the terms of the Labor Agreement between the UNION and PICRA.  (September 12, 2001 Subscription Agreement is attached as Exhibit 1); (Labor Agreement is attached as Exhibit 2).

13.    Article I, Section 1.1 of the Labor Agreement provides that "the UNION is the sole and exclusive bargaining representative of the Employees of the Employers within the Territorial and Trade Jurisdiction of the UNION pursuant to Section 9(a) of the National Labor Relations Act."  (Exhibit 2).

14.    The Territorial Jurisdiction covered by the Labor Agreement is defined in the Preamble of the Labor Agreement and includes work performed in the Rockford Illinois area, Winnebago County, Boone County, Ogle County, Carroll County to Route 78 including Mt. Carroll, Illinois, Stephenson County, Jo Daviess County, except for the area that is known as the Savanna Ordinance Depot.  (Exhibit 2).

15.    The Trade Jurisdiction covered by the Labor Agreement is defined in Article IV, Section 4.1 and essentially includes all plumbing and pipefitting work.  (Exhibit 2).

16.    Through the CBA, KELSEY EXCAVATING also agreed to be bound by the provisions of

3

the Agreements and Declarations of Trust which created the TRUST FUNDS (hereinafter referred to as the "Trust Agreements").

17. Article XIV, Section 14.3 of the Labor Agreement provides that to the extent KELSEY EXCAVATING performs work in the geographic jurisdiction of the UNION, KELSEY EXCAVATING is required to submit monthly remittance reports and contribution payments to the TRUST FUNDS, RPT-LMCC and PICRA. (Exhibit 2).

18. Article XIV, Section 14.7 of the Labor Agreement requires that each employer performing work in the Territorial Jurisdiction of the UNION shall maintain a Surety Bond. (Exhibit 2).

19. Article XII, Section 12.1 of the Labor Agreement provides that "all questions of controversy or interpretations of this Agreement and any other subject matter involving the employment of Journeyman and Apprentices shall be referred to a Joint Conference Committee of equal number of Contractors and Journeymen representing the respective branches of trades of the United Association, for investigation and adjustment and settlement. The Committee shall consist of Negotiating Committee from both parties signatory to this Labor Agreement, which negotiated this Agreement." (Exhibit 2).

20. Article XII, Section 12.2(b) of the Labor Agreement further provides that "all disputes and grievances must be arbitrated, and the decision of the Committee with respect thereto shall be final and binding on all parties subject to this Agreement and there shall be no work stoppage or abandonment of the work during such arbitration." (Exhibit 2).

21. Article XII, Section 12.2(c) of the Labor Agreement provides the procedure for a dispute or grievance: "should a dispute or grievance arise between the parties hereto...or between members of one party and members of the other party, such dispute or grievance shall be

submitted within two pay periods in writing to the respective Chairman of the Employer Negotiating Committee and Business Manager of the Union with a copy to the Joint Conference Committee. Should the Employer Chairman or Business Manager fail to agree and dispose of the matter within twenty-four (24) hours, the dispute or grievance shall hear the evidence and render its decisions as expeditiously as possible. All decisions shall be determined by a majority vote. Should the committee be unable to decide the issue, it shall immediately refer the matter to the Neutral Member of the Committee hereinafter provided for, and the Neutral Member of the Committee hereinafter provided for, and the Neutral Member's decision shall be final and binding upon the parties hereto. Under no circumstances is work to be stopped or the manner of performing the same interfered with pending the result of arbitration." (Exhibit 2).

22. In July 2015, Defendant KELSEY EXCAVATING began performing work on the Pearl City Waste Water Treatment Plant in Pearl City, Illinois (hereinafter referred to as "Pearl City Project"), which is within the Territorial Jurisdiction of the UNION defined in the Labor Agreement.

23. At the Pearl City Project, Defendant KELSEY EXCAVATING has employed individuals that have performed work within the Trade Jurisdiction of the UNION defined in the Labor Agreement; however, Defendant KELSEY EXCAVATING has failed to employ UNION members as required by the Labor Agreement to perform this work and has failed to comply with other obligations of the Labor Agreement, including the obligation to pay fringe benefit contributions to the TRUST FUNDS, RPT-LMCC and PICRA.

24. KELSEY EXCAVATING has been and still is performing work on the Pearl City Project without employing any UNION members and without a Surety Bond in violation of the

5

Labor Agreement.

25. On or about August 10, 2015, the UNION filed a Grievance against KELSEY EXCAVATING. (A copy of the Grievance is attached as Exhibit 3).

26. Pursuant to Article XII of the Labor Agreement, on August 25, 2015, the JCC sent a letter to Mark Kelsey, President of KELSEY EXCAVATING, informing KELSEY EXCAVATING that the Joint Conference Committee ("JCC") would be meeting to consider and adjudicate the grievance. The letter stated that KELSEY EXCAVATING should submit any evidence or written testimony that it wishes the JCC to consider no later than September 15, 2015. (A copy of the August 25, 2015 letter is attached as Exhibit 4).

27. Pursuant to Article XII of the Labor Agreement, the letter specifically informed KELSEY EXCAVATING that failure to submit evidence would result in the JCC rendering a binding decision without further opportunity to do so. (Exhibit 4).

28. KELSEY EXCAVATING failed to remit any evidence to the JCC to consider.

29. On September 24, 2015, the JCC met to consider the grievance and the evidence presented therein. Upon review of the evidence presented to it, the JCC held that KELSEY EXCAVATING is performing work in violation of the Labor Agreement. (A copy of the October 2, 2015 letter to KELSEY EXCAVATING explaining the JCC's opinion is attached as Exhibit 5).

30. The JCC ordered KELSEY EXCAVATING "to pay Local 23 for all back wages and benefits for those hours worked on the Pearly City Waste Water Treatment Plant project that should have been worked by a Local 23 member." (Exhibit 5).

31. The JCC also ordered KELSEY EXCAVATING to "pay Local 23 wages and benefits for all hours that may be worked in the future until the project is completed." (Exhibit 5).

32. A payroll compliance audit of KELSEY EXCAVATING's books and records is necessary to determine the amount of wages and benefits it is required to pay to Plaintiffs.

33. The Trust Agreements authorize "[a]ny authorized representative of the Trustees shall have the right, at all reasonable times during business hours, to enter upon the premises of any Employer and to examine and copy such books, records, papers and reports of the Employer as may be necessary to determine the number of Employees, the hours of work performed, the place of performance and any other information necessary or helpful to the Trustees in performing their duties in accordance with the provisions of this Trust Agreement." (A copy of the PENSION FUND's Trust Agreement is attached as Exhibit 6).

34. Pursuant to Section 502(g)(2) of ERISA, the Labor Agreement and Trust Agreements, employers who fail to submit their monthly contribution reports and contributions to the TRUST FUNDS on a timely basis are responsible for the payment of liquidated damages at a rate of 5% of the delinquent contributions.

35. Pursuant to the Labor Agreement, employers who fail to submit their monthly contribution reports and contributions to the PICRA and RPT-LMCC on a timely basis are responsible for the payment of liquidated damages at a rate of 5% of the delinquent contributions.

36. Pursuant to Section 502(g)(2) of ERISA, and the provisions of the Labor Agreement and Trust Agreements, employers who fail to submit their monthly Contribution Reports and contributions to the TRUST FUNDS on a timely basis are responsible for the payment of interest on unpaid contributions at the rate of Prime plus two percent (2%) per annum from the first day of the month following the month in which they are due until paid, plus any reasonable attorney's fees, court costs and other expenses of maintaining suit.

7

37. Pursuant to the provisions of the Labor Agreement, employers who fail to submit their monthly Contribution Reports and contributions to the PICRA and RPT-LMCC on a timely basis are responsible for the payment of interest on unpaid contributions at the rate of Prime plus two percent (2%) per annum from the first day of the month following the month in which they are due until paid, plus any reasonable attorney's fees and costs of maintaining suit.

38. Plaintiffs have been required to employ the undersigned counsel to collect the monies that are due and owing from KELSEY EXCAVATING.

39. Plaintiffs have complied with all conditions precedent in bringing this suit.

40. Defendant KELSEY EXCAVATING is obligated to pay the reasonable attorney's fees and court costs incurred by the Plaintiffs pursuant to the Labor Agreement, Trust Agreements and 29 U.S.C. §1132(g)(2)(D).

**WHEREFORE**, Plaintiffs respectfully request that:

A. Judgment be entered in favor of Plaintiffs and against Defendant KELSEY EXCAVATING affirming the JCC's Arbitration Award;

B. Judgment be entered in favor of Plaintiffs and against Defendant KELSEY EXCAVATING for all back wages and benefits revealed by a payroll compliance audit;

C. That KELSEY EXCAVATING be ordered to produce any and all payroll records related to the Pearl City Project for inspection so that the amount of wages and contributions owed to the Plaintiffs can be determined;

D. That Judgment be entered in favor of Plaintiffs and against Defendant KELSEY EXCAVATING for any liquidated damages and interest owed as a result of the unpaid

8

contributions revealed by the payroll compliance audit;

E.  That Defendant KELSEY EXCAVATING be ordered to pay the reasonable attorney's fees and costs incurred by the Plaintiffs pursuant to the Labor, Trust Agreements and 29 U.S.C. §1132(g)(2)(D); and

F.  That Plaintiffs have such other and further relief as the Court may deem just and equitable all at the Defendant KELSEY EXCAVATING'S cost pursuant to 29 U.S.C. §1132(g)(2)(E).

Respectfully Submitted,

/s/ Matthew D. Grabell - 6312929
One of Plaintiffs' Attorneys

Johnson & Krol, LLC
300 S. Wacker Drive, Suite 1313
Chicago, IL 60606
(312) 372-8587
matthew@johnsonkrol.com